

IN THE
TENTH COURT OF APPEALS

————————————

No. 10-13-00330-CV

IN THE INTEREST OF R.M., N.M., N.M., AND K.O., CHILDREN

————————————

From the County Court at Law No. 1
Johnson County, Texas
Trial Court No. D201200053

MEMORANDUM OPINION

Ruben[1] appeals from a judgment terminating his parental rights to his three children, R.M., N.M., and N.M.   TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). Ruben complains that the evidence was legally and factually insufficient to support the trial court's findings as to two separate predicate grounds for termination of his parental rights and that the termination was in the children's best interest.   *See* TEX. FAM. CODE ANN. § 161.001(1)(D) & (E) (West Supp. 2013).   Because we find that the evidence was legally and factually sufficient to support the trial court's findings as to section 161.001(1)(E) for endangerment and that the termination of Ruben's parental

_____

[1] We use appellant's first name to protect the identity of the children.

rights was in the children's best interest, the trial court's judgment is affirmed.

**BACKGROUND**

Ruben and Miranda were together as teenagers and had three children, R.M., N.M.1, and N.M.2[2]  By the time N.M.2 was born, Ruben and Miranda were no longer together.  Ruben had also become a drug dealer and was sent to prison in 2010.  While Ruben was in prison, Miranda lived with her mother and her mother's husband with N.M.1 and N.M.2.  By then, Miranda had had another child, K.O., who was also a subject of the underlying termination proceeding.[3]  Miranda's mother and stepfather were drug users and the home was eventually raided for suspected drug activity.  N.M.1, N.M.2, and K.O. were removed from the home and Miranda's care and placed with the Department of Family and Protective Services.  R.M. was living with Ruben's sister but was eventually removed from that home due to allegations of abuse and starvation of R.M.

Ruben was released from prison two months before trial.  Miranda relinquished her parental rights as to R.M., N.M.1, and N.M.2.

**TERMINATION OF PARENTAL RIGHTS**

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department is required to establish a predicate ground

---

[2] Because the two younger children have the same initials, we refer to them as N.M.1 and N.M.2.

[3] Miranda and K.O.'s father relinquished their parental rights as to K.O. and no appeal was filed as to K.O.

listed under subdivision (1) of the statute and to prove that termination is in the best interest of the children. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Only one predicate ground under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Further, termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West 2008 & Supp. 2013). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007 (West 2008). We review the sufficiency of the evidence for a predicate ground and best interest pursuant to the well-established standards set by the Texas Supreme Court. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) and *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) and *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). *See also In the Interest of G.W.*, No. 10-13-00022-CV, 2013 Tex. App. LEXIS 4922 (Tex. App.—Waco Apr. 18, 2013, no pet.) (mem. op.).

*Endangerment*

Ruben complains that the evidence was legally and factually insufficient for the trial court's finding of endangerment under subsection 161.001(1)(E) (West Supp. 2013). Under subsection 161.001(1)(E), the term "endanger" means the children were exposed to loss or injury or jeopardized. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531,

533 (Tex. 1987). Endangerment encompasses "more than a threat of metaphysical injury or possible ill effects of a less-than-ideal environment." *Boyd*, 727 S.W.2d at 533. The statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the conduct endangers the emotional well-being of the children. *See id*. The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the children's physical or emotional well-being. *See Boyd*, 727 S.W.2d at 534. Further, the conduct need not occur in the child's presence. *Walker v. Tex. Dep't of Family & Protective Servs*., 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

*Evidence*

Ruben admitted that he had been a drug dealer immediately prior to his arrest, conviction, and imprisonment for dealing drugs. He testified that he was very involved with his children at this same time. He believed his occupation as a drug dealer did not endanger his children because he would not have the children at his house where he dealt drugs or play with the children in the town in which he dealt drugs. He admitted, though, that drug dealing was potentially violent and highly dangerous and that one could not be a part-time drug dealer.

Further, Ruben admitted to "jumping bail" after his arrest and taking two of his three children, R.M. and N.M.1, to Florida. He took two of the children because he believed Miranda could not handle all three children. Ruben knew he would

eventually be arrested for jumping bail. When he was arrested, R.M. and N.M.1 were left in Florida with Ruben's girlfriend who then paid for R.M.'s and N.M.1's way back to Texas. R.M. and N.M.1 were 5 years old and three years old at the time. Ruben did not think he was endangering his children at the time he left for Florida with the two children. He said he was more concerned about losing the children and whether Miranda could take care of them. At the time of the trial, he agreed that his actions were dangerous and endangered the children.

Using the appropriate standards for determining the sufficiency of the evidence, we find that the evidence was legally and factually sufficient to support the trial court's finding pursuant to section 161.001(1)(E). We overrule issues three and four. Because we have found the evidence sufficient to establish one predicate ground for termination, we need not address issues one and two.

*Best Interest*

Ruben also complains that the evidence was legally and factually insufficient for the trial court to have found that termination was in the children's best interest. In determining whether termination of Ruben's parental rights was in the children's best interest, we consider the well-established *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). There is no requirement that the Department prove all these factors as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong

conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence establishing one of the predicate grounds under section 161.001(1) also may be relevant to determining the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27-28.

*Evidence*

Ruben was released from prison just two months before trial. He had been working on satisfying the Department's service plan along with his parole requirements. It left him little time to take care of the children if they were returned to him. He also had no place for the children. He lived with his sister who had previously had possession of R.M. R.M. was removed from her home due to allegations of abuse and starvation of R.M. Ruben did not believe the allegations against his sister.

Ruben acknowledged that the children should not be returned to him at the moment but could live with his stepfather. The Department had not completed a home study of the stepfather as suitable placement by the time of trial. Ruben attributed this failure to the caseworker losing the stepfather's name.

Ruben did not complete individual counselling because he missed several appointments without calling or rescheduling. He testified, however, that he did call to let the counselor know he would be missing the appointments but acknowledged that he forgot about one appointment because he did not write it on his calendar. He also acknowledged that he had a very bad short term memory from smoking a lot of

"weed." Ruben was characterized as continuing to blame others and not taking responsibility for the children's removal.

Two of the children required therapy appointments to which the foster parents were taking them. The oldest child, R.M., was in danger of failing first grade for the second time when he was removed from Ruben's sister's home. The foster parents were working with R.M. to get him caught up in school. Ruben testified that he could provide for the children in the future but was not asked for any specific plan in light of the children's needs.

Ruben regularly visited with the children. He testified that R.M. and N.M.1 had expressed to him that they wanted to go home with him. N.M.2 had not verbalized any intent. The Department acknowledged that the desires of the children varied, especially after visits by their parents. The Department and the CASA caseworker believed that the children were happy in the foster home. The foster mother believed the children were happy and doing well in her home. The foster parents were willing to keep the children in their home for as long as necessary and would be available for adoption if the children were not placed with Ruben's family.

Although Ruben had made progress after his release from prison and had exercised regular visitation with the children, we find that the evidence was legally and factually sufficient for the trial court to have found by clear and convincing evidence that termination of the parent-child relationship was in the children's best interest.

Ruben's fifth and sixth issues are overruled.

**CONCLUSION**

Having found that the evidence was legally and factually sufficient as to one predicate ground and the best interest of the children, we affirm the judgment of the trial court.

Absent a specific exemption, the Clerk of the Court must collect filing fees at the time a document is presented for filing. TEX. R. APP. P. 12.1(b); Appendix to TEX. R. APP. P., Order Regarding Fees (Amended Aug. 28, 2007, eff. Sept. 1, 2007). *See also* TEX. R. APP. P. 5; 10TH TEX. APP. (WACO) LOC. R. 5; TEX. GOV'T CODE ANN. §§ 51.207(b); 51.208; § 51.941(a) (West 2013). Under these circumstances, we suspend the rule and order the Clerk to write off all unpaid filing fees in this case. TEX. R. APP. P. 2. The write-off of the fees from the accounts receivable of the Court in no way eliminates or reduces the fees owed.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed February 20, 2014
[CV06]